IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| VINCENT L. WEBB, a resident of the State of Nevada,<br><br>    Plaintiffs,<br><br>v.<br><br>TRAILER CITY, INC., an Oregon corporation; DAN E. WALKER, a resident of Oregon; and CHANGZHOU NANXIASHU TOOL CO., LTD., a foreign corporation,<br><br>    Defendants. | 3:11-cv-00747-BR<br><br>OPINION AND ORDER |

**BROWN, Judge.**

    This matter comes before the Court on Plaintiff Vincent L. Webb's request for damages (#26) against Defendant Changzhou Nanxiashu Tool Co., Ltd.,[1] for violation of the terms of the Permanent Injunction (#16) issued against Defendant.

    For the reasons that follow, the Court **AWARDS** Plaintiff

---

    [1] Plaintiff's request for damages pertains only to Defendant Changzhou Nanxiashu Tool Co., Ltd. Plaintiff's claims against all other named Defendants have been resolved.

1 - OPINION AND ORDER

sanctions against Defendant for damages in the amount of $6,399,540.00.

## BACKGROUND

On June 20, 2011, Plaintiff filed a Complaint in this Court and alleged claims for trademark infringement; violation of Oregon Unlawful Trade Practices Act, Oregon Revised Statutes § 646.608(b); copyright infringement; and unfair competition against Defendant. On June 29, 2011, Defendant was served with Summons and Complaint. Defendant failed to answer or otherwise to appear within the time required. On August 19, 2011, the Court entered a Default Judgment and Permanent Injunction (#16) against Defendant.

Defendant was required under the terms of the Permanent Injunction to return proprietary materials to Plaintiff and was enjoined from "manufacturing, exporting, selling, or importing into the United States" trailers that were manufactured using Plaintiff's proprietary materials or trailers "identical to any of the models which [Defendant] previously manufactured for Plaintiff." Although an unspecified amount of damages was alleged in Plaintiff's Complaint, no monetary damages were requested by Plaintiff in the Default Judgment.

On September 14, 2016, Plaintiff filed a Motion (#18) to Reopen Case and Order to Show Cause why Defendant should not be

2 - OPINION AND ORDER

held in contempt for violating the terms of the Default Judgment and Permanent Injunction. On September 16, 2016, the Court issued an Order (#21) and required Defendant to respond to Plaintiff's Motion for Order to Show Cause by October 3, 2016. Defendant did not respond. On October 7, 2016, Plaintiff filed a Reply requesting the Court to reopen the case, issue an order to show cause why Defendant should not be held in contempt, and set a hearing to determine damages.

On October 12, 2016, the Court issued an Order to Show Cause why Defendant should not be held in contempt, and the Court set a hearing for November 3, 2016. On October 17, 2016, Plaintiff filed a certificate of service indicating Defendant had been served with the Order to Show Cause. On November 2, 2016, Plaintiff filed a Brief (#26) in Support of Damages and requested an award of $14,867,010.00 in damages.

On November 3, 2016, the Court held the show-cause hearing. Defendant failed to appear as ordered. The Court entered an Order (#28) finding Defendant in contempt for failing to comply with the terms of the Permanent Injunction and took the issue of damages under advisement.

On January 5, 2017, the Court issued an Order (#29) directing Plaintiff to file a supplemental brief to support the amount of damages sought. On March 13, 2017, Plaintiff filed a Supplemental Memo (#36) regarding damages at the direction of the

Court and now seeks damages of $11,947,505.00 together with pre-judgment interest pursuant to Oregon Revised Statutes § 82.010.

**STANDARDS**

The court may impose civil contempt sanctions to coerce the defendant into compliance with the court's order and to compensate the complainant for losses sustained. *United States v. UMWA*, 330 U.S. 258, 303-04 (1947). *See also Shell Offshore Inc. v. Greenpeace, Inc.*, 815 F.3d 623, 629 (9th Cir. 2016)("The purpose of civil contempt is coercive or compensatory.").

In a civil contempt proceeding based on a patent-infringement case the district court is free to exercise its inherent discretion to correct willful violations of the court's orders when determining an award of damages. The court is not bound by provisions of the patent-infringement statute. *See Dow Chem. Co. v. Chem. Cleaning, Inc.*, 434 F.2d 1212, 1214-15 (5th Cir. 1970). *See also Rousseau v. 3 Eagles Aviation, Inc.*, 130 F. App'x 687, 691 n.12 (5th Cir. 2005).

**DISCUSSION**

I. **Background.**

Plaintiff states he met with Defendant on March 27, 2012, concerning a new proposal by Defendant to obtain permission to

manufacture Plaintiff's products, but the parties did not reach an agreement at that time. Plaintiff did not ask the Court to enforce the terms of the Permanent Injunction after the failed attempts to reach an agreement in 2012. Similarly, Plaintiff did not seek to enforce the Permanent Injunction or to obtain damages after a proposed sales program was rejected by Scotsco, a large retail distributor of trailer equipment in the northwestern United States, allegedly based on competition in the market place from cheaply priced infringing products made by Defendant. Plaintiff, however, contends he did not have evidence of such infringing products until October 2015 when he discovered trailers that infringed on his designs were being manufactured by Defendant and were being sold by another distributor. It seems unlikely, however, that Plaintiff would not have had at least some notice of the sale of infringing products in 2012 when his marketing proposal to Scotsco was rejected.

## II. Plaintiff's Calculation of Damages.

Plaintiff seeks damages of $11,947,505.00. The damages are based on the report prepared by Plaintiff's expert, who is a certified public accountant, certified in financial forensics and business valuations, an accredited senior appraiser, and experienced in economic-damages analysis and lost-profit calculations. The expert relied on information provided by Plaintiff, and his calculation of damages was based on the

following assumptions: (1) the period over which Plaintiff incurred damages, (2) the number or quantity of trailer units that Plaintiff lost the opportunity to sell as a result of the infringement, (3) the distributor cost/revenue per unit, (4) the cost to produce each unit, (5) the freight/shipping cost per unit of those trailers, and (6) the region affected.

The expert noted Plaintiff "does not have a traditional accounting system." The expert considered the sales program that Plaintiff attempted to negotiate in October 2012 with Scotsco and that Plaintiff asserted Scotsco rejected "because of competition from cheaply priced unauthorized trailers in the Northwest market" that destroyed the market for Plaintiff's authentic trailers. For example, Plaintiff asserts the retail distributors' wholesale cost for Plaintiff's most popular trailer model was $874 and sold for a retail price of $1,299, but infringing models of the same trailer that were manufactured by Defendant had a retail selling price as low as $675. Thus, Plaintiff contends he could not sell his authentic trailers because the retail distributors' wholesale price for the authentic product was higher than the retail price of the infringing product made by Defendant.

Based on Plaintiff's pricing model for his trailers and the estimated sales volumes for the period of 2013 through 2020, Plaintiff's expert determined Plaintiff's damages were

$6,445,644.00 for lost profits in the United States and $5,501,870.00 for lost profits in Canada or a total of $11,947,505.00.

Plaintiff contends the appropriate measure of sanctions for Defendant's violation of the Permanent Injunction is the measure of compensatory damages for violation of the Lanham Act, 15 U.S.C. § 1117(a), which includes Plaintiff's losses, Defendant's profits, and Plaintiff's attorneys' fees.  Plaintiff, however, seeks to recover only his compensatory damages on the grounds that he has "scant evidence on which to estimate [Defendant's] profits" and Plaintiff's attorneys' fees "do not amount to a significant fraction of his damages."

Plaintiff's pricing model and calculation of damages, however, is based on the following assumptions:  All three models of Plaintiff's trailers would have been sold by a certain number of retail distributors in the United States and Canada and the number of retail distributors and units sold would increase each year.  Plaintiff, however, does not take into account any potential changes in the market place or the economy that could impact sales in the future.

On this record Plaintiff's request for damages over five years after entry of the Permanent Injunction and for the period from 2013 through 2020 is unreasonable, and, therefore, the Court declines to award damages in the amount calculated by Plaintiff.

7 - OPINION AND ORDER

**III. Reasonable damages.**

The Court, in the exercise of its discretion, may impose reasonable damages that will correct willful violations of the court's orders. The object of civil contempt sanctions is to compel a defendant to comply or to compensate a plaintiff for losses. *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303-04 (1947). *See also Cunningham v. Weston*, 180 F. App'x 644, 648 (9th Cir. 2006). As noted, the determination of such sanctions is within the sole discretion of the court. *See Britton v. Co-op Banking Group*, 916 F.2d 1405, 1409 n.4 (9th Cir. 1990).

On this record the Court concludes a reasonable period for calculating Plaintiff's damages is from 2011 when the Permanent Injunction was entered through 2016 when Plaintiff filed his Motion. Plaintiff, however, did not provide any information to support his claim for damages for the period 2011-2012. The Court, therefore, will consider only Plaintiff's calculation of damages for 2013-2016 when determining the reasonable amount for sanctions.

Plaintiff calculated his loss of sales in the United States and Canada for those years as follows:

|  | US | Canada | Total |
|---|---|---|---|
| 2013 | $264,330 | $176,220 | $440,550 |
| 2014 | $583,200 | $437,400 | $1,020,600 |
| 2015 | $1,112,250 | $889,800 | $2,002,050 |
| 2016 | $1,601,640 | $1,334,700 | $2,936,340 |
| **Total** | $3,561,420 | $2,838,120 | $6,399,540 |

On this record the Court determines a sanction for damages suffered by Plaintiff in the amount of $6,399,540.00 is reasonable.

**IV. Pre-judgment Interest.**

Plaintiff also seeks pre-judgment interest pursuant to Oregon Revised Statutes § 82.010. Section 82.010(1) allows interest at a rate of nine percent per annum on money due on an open account, money "received to the use of another and retained beyond a reasonable time without the owner's express or implied consent," or money due under a contract that does not state a rate of interest. Section 82.010(2) also allows interest at the rate of nine percent per annum on a judgment entered in favor of the plaintiff in a civil action.

Here the damages sought by Plaintiff do not fall within any of the categories indicated in § 82.010(1). In addition Plaintiff does not offer any authority for the imposition of pre-judgment interest.

On this record the Court declines to award Plaintiff pre-judgment interest. The Court, however, awards Plaintiff post-judgment interest at the rate authorized in 28 U.S.C. § 1961 to

9 - OPINION AND ORDER

be set out in the Supplemental Judgment submitted to the Court no later than May 31, 2017.

**CONCLUSION**

For these reasons, the Court awards sanctions in the amount of $6,399,540.00 in favor of Plaintiff Vincent L. Webb and against Defendant Changzhou Nanxiashu Tool Co., Ltd., as Plaintiff's damages for Defendant's failure to comply with the Court's Permanent Injunction (#16).

The Court directs Plaintiff to submit a form of Supplemental Judgment **no later than May 31, 2017.**

IT IS SO ORDERED.

DATED this 15th day of May, 2017.

/s/ Anna J. Brown
ANNA J. BROWN
United States District Judge